**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SQUEEZE HOLDINGS, LLC f/k/a** | § | |
| **MAIN SQUEEZE JUICE COMPANY** | § | |
| **FRANCHISE, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | **Case No. _____** |
| | § | |
| **v.** | § | |
| | § | |
| **DROST INVESTMENTS, LLC;** | § | |
| **JEFFREY DROST; and TABATHA** | § | |
| **JONES,** | § | |
| | | |
| *Defendants.* | | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Squeeze Holdings, LLC f/k/a Main Squeeze Juice Company Franchise, LLC ("Plaintiff" or "MSJC"), for its complaint against defendants Drost Investments, LLC ("DILLC"), Jeffrey Drost ("Drost"), and Tabatha Jones ("Jones") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE CASE

1.      This is an action for trademark infringement, breach of contract, and unfair competition, following the termination of a franchise agreement.

2.      MSJC is a franchisor that licenses a distinctive system for the formation, development, and operation of retail establishments that offer vegetable and fruit juices, smoothies, cleanses, acai bowls, and other health-centric beverages, snacks, and foods, and related items ("Franchised Stores") under the Main Squeeze Juice Company® tradename and trademarks (the "Main Squeeze Juice Company Marks") throughout the United States.

3.      MSJC authorizes its franchisees to use its distinctive system and the Main Squeeze Juice Company Marks in developing and operating Franchise Stores in nonexclusive designated geographic territories.  MSJC currently has approximately 30 Franchised Stores and additional franchises under development.

4.      DILLC is a former MSJC franchisee that was previously licensed to use the MSJC system and the Main Squeeze Juice Company Marks in the geographic areas of Lafayette, Louisiana and Webster, Texas, pursuant to the terms of the Main Squeeze Juice Company Franchise, LLC Franchise Agreement dated September 28, 2017 (the "Franchise Agreement") A complete and authentic copy of the Franchise Agreement is attached as **Exhibit "1"**.

5.      Upon information and belief, Drost and Jones are members of DILLC.

6.      Drost and Jones executed a Personal Guaranty and Undertaking dated September 28, 2017 (the "Guaranty"), an exhibit to the Franchise Agreement, pursuant to which they agreed to unconditionally guarantee all of DILLC's obligations under the Franchise Agreement.

7.      DILLC breached the Franchise Agreement by permanently closing its Franchised Store located in Webster, Texas on January 12, 2025.

8.      As a result of DILLC's premature and unauthorized closure of the Franchised Store, MSJC properly terminated the Franchise Agreement on January 27, 2025.

9.      Pursuant to the terms of the Franchise Agreement, upon its termination, DILLC was obligated to immediately cease all use of the Main Squeeze Juice Company Marks and remove the marks and trade dress from its Franchised Store.  However, DILLC has failed or refused to do so, thereby willfully and blatantly infringing on MSJC's trademark rights in violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and in breach of the terms of the Franchise Agreement.

Drost and Jones are also personally liable for trademark infringement due to their contributory infringement.

10.    Drost and DILLC are also engaged in unfair competition in violation of the Lanham Act by disparaging the Main Squeeze Juice Company Marks in communications with others, including other MSJC franchisees and vendors of MSCJ.

11.    As a direct and proximate result of DILLC's breach of the Franchise Agreement and Defendants' misuse and disparagement of MSJC's federally protected trademarks and trade name, MSJC has suffered and will continue to suffer irreparable harm unless Defendants are enjoined from their unlawful conduct.

12.    MSJC seeks preliminary and permanent injunctive relief to enjoin Defendants' ongoing wrongful infringement and unfair competition.

13.    MSJC also seeks damages arising from DILLC's breach of the Franchise Agreement.

## THE PARTIES

14.    MSJC is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in New Orleans, Louisiana.

15.    DILLC is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Iowa, Louisiana.

16.    DILLC was the owner and operator of a Franchised Store located at 820 W. Bay Area Blvd., Suite 300A, Webster, TX 77598 (the "Webster Store").

17.    Drost is a natural person and, upon information and belief, a citizen and resident of the State of Louisiana.

18.     Jones is a natural person and, upon information and belief, a citizen and resident of the State of Louisiana.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction pursuant to Sections 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121, and 28 U.S.C. §§ 1331, 1338 & 1367(a). The civil action alleged arises under the laws of the United States, including an Act of Congress relating to trademarks.

20.     This Court has supplemental or pendent jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

21.     This Court has personal jurisdiction over Defendants because they conduct business in this district, the events giving rise to MSJC's claims occurred in this district, and Defendants expressly consented in the Franchise Agreement and Guaranty, respectively, to jurisdiction in "any court of competition jurisdiction" for any claims by MSJC "for failure to pay amounts due and owing under [the Franchise] Agreement," and for any dispute "where injunctive or other extraordinary relief is being sought." Ex. 1, Franchise Agreement, § 20.1(f) & Attachment D-1 (Guaranty), para. 7.

22.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and MSJC's ongoing irreparable harm is occurring within this district.

## FACTUAL BACKGROUND

### The Main Squeeze Juice Company® Marks

23.     MSJC, through a license from its affiliate, Main Squeeze Juice IP, LLC, is the owner of all right, title, and interest in the Main Squeeze Juice Company Marks, including but not limited to those registered with the United States Patent and Trademark Office under following

United States Trademark Registration Numbers for use in connection with bar services featuring smoothies and juices, juice bar services, and restaurant services: 5,084,563, 5,568,665, 5,568,666, 6,052,617, and 6,097,940.

24.    U.S. Registration Numbers 5,084,563, 5,568,665, 5,568,666, 6,052,617, and 6,097,940 are valid, subsisting, uncancelled, and in full force and effect.

25.    MSJC and Main Squeeze Juice IP, LLC have given notice to the public of the registration of the MSJC trademarks and service marks as provided in 15 U.S.C. § 1111.

26.    Main Squeeze Juice IP, LLC, and MSJC as its licensee, also have common law rights in the Main Squeeze Juice Company Marks.

27.    In addition to its registered uses of the Main Squeeze Juice Company Marks, MSJC, its affiliates, and its franchisees use the Main Squeeze Juice Company Marks for, among other things, advertising products and services, and other activities related to developing and operating fast-casual juice and smoothie bars.

**MSJC's Business and Use of the Main Squeeze Juice Company Marks**

28.    MSJC opened its original juice and smoothie bar in Lake Charles, Louisiana in 2017.

29.    Since 2017, MSJC has used the Main Squeeze Juice Company Marks in connection with marketing and advertising fast-casual juice and smoothie bars and related products and services.

30.    MSJC operates under a franchise business model. MSJC and its franchisees enter individual franchise agreements that govern the parties' franchise relationship.  Under these agreements, franchisees are required to comply with certain duties and obligations in exchange for a non-exclusive license to utilize a business system and format with service marks and business

methods that are proprietary to MSJC, and MSJC retains significant rights to ensure the protection of its marks, including the uniform quality of services and products provided by authorized franchisees.

31. Pursuant to the franchise agreements, MSJC also imposes strict standards and specifications upon its franchisees in an extensive "Operations Manual" and other manuals MSJC provides to its franchisees (the "Manuals"). The Manuals ensure quality control and uniformity among the franchise network, and govern areas such as marketing; advertising; products; operating procedures and policies; Franchised Store design and maintenance; customer service; training; Franchised Store management; and others.

32. Pursuant to the franchise agreements, each MSJC franchisee operates its Franchised Stores under the name and mark "Main Squeeze Juice Company"®, in word and design form, including the design marks pictured below:



33. Through extensive use and marketing, the Main Squeeze Juice Company Marks have become recognized in the industry as being associated with high quality, fresh, and delicious juices and smoothies, other health-centric products and related services, and are therefore very valuable to MSJC.

34.    MSJC has spent considerable money, time, and effort over several years in promoting and popularizing the Main Squeeze Juice Company Marks, and in developing and preserving the goodwill associated with the marks to cause consumers throughout the United States to recognize the Main Squeeze Juice Company Marks as distinctly designating MSJC products and services as originating with MSJC.

35.    The value of the goodwill developed in the Main Squeeze Juice Company Marks does not admit of precise monetary calculation, but because MSJC is a significant franchisor of juice and smoothie bars, and is widely known as a provider of related products and services, the value of MSJC goodwill is substantial.

36.    The Main Squeeze Juice Company Marks are entitled to immediate and strong protection from unfair competition, infringement, and injury.

### MSJC and Defendants Execute the Franchise Agreement and Guaranty

37.    From approximately 2017 to 2019 Drost worked as a franchise sales broker for MSJC.

38.    At all times relevant to this complaint, Drost and Jones are the members of DILLC.

39.    DILLC and MSJC entered into the Franchise Agreement on or about September 28, 2017. Ex. 1., Franchise Agreement.

40.    Pursuant to the Franchise Agreement, DILLC was granted a non-exclusive license to operate an MSJC franchise and to use the Main Squeeze Juice Company Marks in specific geographic areas in Lafayette, Louisiana and Webster, Texas for a term of ten years commencing on September 28, 2017.

41.     The Franchise Agreement obligated DILLC to operate the Franchised Store during normal business hours on all regular business days, subject to compliance with applicable laws and the lease of the Franchised Store premises. Ex. 1, Franchise Agreement, § 11.8.

42.     The Franchise Agreement provides that if DILLC failed to operate the Franchised Store for a period of two (2) consecutive business days in any 12-month period, the Franchise Agreement is subject to automatic termination, upon written notice and without the opportunity to cure. *Id.*, § 14.1(f).

43.     The Franchise Agreement provides that in the event of a default by DILLC and a resultant termination—such as termination for default under Section 14.1(f) of the Franchise Agreement—DILLC must pay to MSJC:

> a.     Within fifteen (15) days after termination, "all unpaid Royalty Fees and Marketing Fees, all amounts due for purchases from [MSJC] or [its] Affiliates, any other amounts due to MSJC or [its] Affiliates which are unpaid, and all applicable late fees and interest"; and
>
> b.     "as liquidated damages and not as a penalty, damages in the amount equal to: (i) [DILLC's] average weekly Royalty Fee plus [DILLC's] average weekly Marketing Fee due for the last fifty-two (52) weeks . . . , (ii) multiplied by the number of weeks remaining in the then-current Term of the Franchise Agreement, and (iii) discounted to present value using the then-current prime rate of interest quoted by [MSJC's] principal commercial bank."

*Id.* § 15.7.

8

44.     DILLC and MSJC agreed to the liquidated damages forest forth in Section 15.7 based on a reasonable estimate of the damages MSJC would incur in the event of a premature termination due to DILLC's breach of the Franchise Agreement.

45.     Article 15 of the Franchise Agreement imposes numerous additional post-termination obligations on DILLC in the event of termination, including the following:

    a.    DILLC must "*immediately* cease and desist from all use of the Main Squeeze Juice Company Marks  and use of MSJC's Confidential Information (as defined in the Franchise Agreement);

    b.    Within fifteen (15) days of expiration or termination, DILLC must authorize, and not to interfere with, the transfer of all telephone numbers and directory listings used in connection with its Franchised Store to MSJC or at its direction; and/or instruct the telephone company to forward all calls made to DILLC's number to numbers MSJC specifies;

    c.    DILLC must *immediately* deliver to MSJC the "Manuals and all other records, correspondence, files, and any instructions containing Confidential Information relating to the operation of the Franchised Store in [DILLC's] possession; and all copies thereof (all of which are acknowledged to be [MSJC's] property)," and "must destroy, which destruction may be supervised by [MSJC] or its designees and certified as complete by [DILLC], all digital copies of such Confidential Information";

    d.    At DILLC's own cost and without any payment from MSJC for such items, DILLC must deliver to MSJC, make available to MSJC for pick-up, or destroy (at MSJC's option), in any case within ten (10) days, "all signs,

9

sign-faces, sign-cabinets, marketing materials, forms, and other materials [MSJC] requests containing any [MSJC] Mark or otherwise identifying or relating to a [MSJC] Franchised Store"; and

e.    At DILLC's own expense, it must take all closing, de-identification, and de-branding steps, and make the alterations to the Franchised Store's interior and exterior as MSJC specifies in its Manuals (or otherwise communicated to DILLC at the time) to distinguish the Franchised Store clearly from its former appearance and from other MSJC Franchised Stores in order to prevent public confusion and protect the marks and the system.

Ex. 1, Franchise Agreement, §§ 15.1–15.6.

46.    The Franchise Agreement further provides that DILLC "will pay to [MSJC] all damages, costs and expenses, including reasonable attorneys' fees, incurred by [MSJC] subsequent to the termination or expiration of the franchise . . . in obtaining injunctive relief or other relief for enforcement of any provisions contained in Articles 13 and 15" of the Franchise Agreement. *Id.*, § 15.9.

47.    Article 20 of the Franchise Agreement contains an arbitration clause pursuant to which the parties may arbitrate "any claim, controversy, or dispute" ("Dispute"). However, this clause includes a broad carveout, which expressly provides that DILLC has the right "to apply to any court of competition jurisdiction, in lieu of arbitration, for failure to pay Royalty Fees or any other amounts due and owing under this Agreement," and that either party has "the right to apply to any court of competent jurisdiction, in lieu of arbitration, for any Disputes where injunctive or other extraordinary relief is being sought." *Id.*, § 20.1(f).

48.     Article 20 of the Franchise Agreement also includes a choice-of-law provision, which provides that the Franchise Agreement "shall be governed, interpreted, and construed under the laws of Louisiana," and that "[i]n the event of any conflict of law, the laws of Louisiana shall prevail, without regard to the application of Louisiana conflict of law rules." *Id.*, § 20.3.

49.     Article 20 of the Franchise Agreement further provides that DILLC "agree[s] that [MSJC] will not be required to prove actual damages or post a bond or other security in seeking or obtaining injunctive relief (both preliminary and permanent) and/or specific performance with respect to this Agreement." *Id.*, § 20.7.

50.     In connection with DILLC's execution of the Franchise Agreement, Drost and Jones executed the Guaranty on or about September 28, 2017. *See* Ex. 1, Franchise Agreement, Attachment D-1.

51.     Under the Guaranty, Drost and Jones agreed to unconditionally guarantee all of DILLC's obligations under the Franchise Agreement. *Id.*

52.     Under the Guaranty, Drost and Jones also agreed that the provisions contained in Article 20 of the Franchise Agreement will apply to "any dispute arising out of or relating to this Guaranty." *Id.*, ¶ 7.

### DILLC's Breach of the Franchise Agreement

53.     Without MSJC's prior approval, DILLC closed the Webster Store as of January 12, 2025, and did not reopen it.

54.     Because more than two consecutive business days passed after the store's closure, and it has remained closed, DILLC's actions amount to abandonment of the franchise, which constitutes a material breach of the Franchise Agreement and good cause for termination. *See* Franchise Agreement, § 14.1(f).

11

55.     Accordingly, on January 27, 2025, MSJC terminated the Franchise Agreement as authorized by Section 14.1(f) of the Franchise Agreement. A true and authentic copy of MSJC's notice of termination (the "Notice of Termination"), is attached hereto as **Exhibit "2"**.

56.     In the Notice of Termination, MSJC demanded that Defendants immediately cease and desist in its use of the Main Squeeze Juice Company Marks, including by de-branding the Webster Store.

57.     MSJC also demanded in the Notice of Termination that Defendants pay the amounts due under Section 15.7 of the Franchise Agreement, including past due royalties in the amount of $176.75 and liquidated damages in the amount of $73,446.00.

58.     Notwithstanding MSJC's termination of the Franchise Agreement, Defendants have failed or refused to comply with its post-termination obligations.

59.     Notably, Defendants have failed or refused to discontinue the use of the Main Squeeze Juice Company Marks as required by Sections 15.1 and 15.6 of the Franchise Agreement. Moreover, the Webster Store is still displaying the marks as of the date of the filing of this complaint.

60.     Because the Webster Store is continuing to display the Main Squeeze Juice Company Marks as well as other indicia of it being a Franchised Store, despite being closed, Defendants are continuing to infringe on Plaintiff's marks and MSJC continues to suffer irreparable harm in the form of damage to its reputation and goodwill.

61.     Defendants have also failed and refused to deliver to MSJC, as required by Section 15.3, the Manuals, other records, correspondence, files, and any instructions containing Confidential Information relating to the operation of DILLC's former Franchised Store.

62.     Additionally, despite the Franchise Agreement's termination, DILLC has refused or failed to pay the amounts due and owing to MSJC, including past due royalties in the amount of $176.75 and liquidated damages in the amount of $73,446.00.

63.     Under the terms of the Guaranty, Drost and Jones are also personally liable for all amounts owed to MSJC.

64.     Drost and Jones have breached the Guaranty by failing to pay the amounts DILLC owes to MSJC.

### Drost's Disparaging Statements Regarding MSJC

65.     In both his prior role as a franchise sales broker and as managing member of DILLC, Drost formed relationships and has engaged in communications with numerous principals and managers of other MSCJ franchisees.

66.     Additionally, Drost has formed relationships with individuals who work for key distributors that supply MSCJ's Franchised Stores, such as Ben E. Keith Beverages ("BEK").

67.     Upon information and belief, Drost has informed other MSCJ franchisees, including those located in the Houston area, that MSCJ is not, or no longer is, a viable franchise brand and has otherwise disparaged the marks and franchise system.

68.     Upon information and belief, prior to causing DILLC to close the Webster Store, Drost told employees of BEK that he was closing that store and that other Houston area Franchised Stores would also soon be closing, which is and was false or misleading.

69.     Drost's disparaging statements to third parties regarding MSCJ, its marks and its franchise system are attributable to DILLC, as Drost acted as an agent of DILLC in his dealings and communications with other MSCJ franchisees and distributors.

70.     Drost's disparagement of the Main Squeeze Juice Company Marks and franchise system have caused and continue to cause MSCJ irreparable harm.

## FIRST CLAIM FOR RELIEF

### TRADEMARK  INFRINGEMENT
### Lanham Act §32(1) (15 U.S.C. § 1114)
### (Against All Defendants)

71.     MSJC realleges and incorporates each allegation contained in the preceding paragraphs.

72.     Defendants are not authorized to use or display the Main Squeeze Juice Company Marks.

73.     As described herein, Defendants continue to use the Main Squeeze Juice Company Marks in connection with the Webster Store.

74.     Defendants' unauthorized use of the Main Squeeze Juice Company Marks gives the consuming public the false impression that MSJC is still associated or affiliated with the former Webster Store.

75.     Defendants' unauthorized use of the Main Squeeze Juice Company Marks is likely to cause confusion or mistake to the extent that it causes the relevant public to falsely believe that DILLC's former Franchised Store is still approved or sponsored by MSJC.

76.     Defendants' wrongful and unauthorized conduct infringes on the Main Squeeze Juice Company Marks, including United States Trademark Registration Numbers 5,084,563, 5,568,665, 5,568,666, 6,052,617, and 6,097,940.

77.     MSJC has previously demanded that Defendants cease all use of the Main Squeeze Juice Company Marks.

78.     Defendants have continued using the Main Squeeze Juice Company Marks, even after receiving MSJC's demand to cease and desist.

79.     Defendants' actions, as described above, were and are intentional, willful, and in reckless disregard of MSJC's rights.

80.     Defendants' actions, as described above, have unjustly damaged the Main Squeeze Juice Company Marks, business reputation, and the goodwill associated with the Main Squeeze Juice Company Marks.

81.     Defendants' actions, as set forth above, are causing irreparable injury to MSJC for which there is no adequate remedy at law.

82.     Defendants' actions, as set forth above, constitute willful trademark infringement, thereby entitling MSJC to the remedies set forth in 15 U.S.C. §§ 1116, 1117 and 1118.

83.     Unless enjoined by the Court, Defendants will continue to infringe upon the Main Squeeze Juice Company Marks, thereby causing MSJC to sustain irreparable harm.  This threat of future injury to MSJC's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the Main Squeeze Juice Company Marks and to ameliorate and mitigate the harm to MSJC.

<u>**SECOND CLAIM FOR RELIEF**</u>

**UNFAIR COMPETITION IN VIOLATION OF LANHAM ACT**
**Lanham Act § 43(a) (15 U.S.C. § 1125(a)(1)(A)**
**(Against All Defendants)**

84.     MSJC realleges and incorporates each allegation contained in the preceding paragraphs.

85.     MSJC has continuously and extensively used the Main Squeeze Juice Company Marks in connection with its fast-casual retail establishments that offer vegetable and fruit juices,

smoothies, cleanses, acai bowls, and other health-centric beverages, snacks, and foods, and related items.

86.    As a result of MSJC's use of the Main Squeeze Juice Company Marks, MSJC has common law trademark rights in addition to its federal trademark rights.

87.    The Main Squeeze Juice Company Marks have come to represent and symbolize the reputation and valuable goodwill associated with MSJC's juice and smoothie bar products and related services.

88.    Defendants are not authorized to use the Main Squeeze Juice Company Marks.

89.    Defendants' unauthorized use of the Main Squeeze Juice Company Marks is likely to cause confusion or mistake, or to deceive consumers into falsely believing that the Webster Store is approved, endorsed or sponsored by MSJC, in violation of 15 U.S.C. § 1125(a)(1)(A).

90.    Additionally, Drost's false or misleading descriptions or representations of fact regarding MSJC to other franchisees and BEK are likely to cause confusion or deceive others and/or misrepresent the nature, characteristics, qualities, of MSJC's services and commercial activities, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C § 1125(a).

91.    Defendants' unauthorized use of the Main Squeeze Juice Company Marks and disparagement of MSJC's franchise system was and continues to be done intentionally, willfully, and in reckless disregard for MSJC's rights.

92.    Defendants' actions set forth above have unjustly damaged the Main Squeeze Juice Company Marks, MSJC's business reputation, and the goodwill associated with the Main Squeeze Juice Company Marks.

93.    Defendants' actions are causing irreparable harm to MSJC for which there is no adequate remedy at law.

94.     Defendants' actions, as described herein, constitute willful trademark infringement, thereby entitling MSJC to the remedies available under 15 U.S.C. §§ 1116, 1117, and 1118.

95.     Unless enjoined by the Court, Defendants will continue to unfairly use the Main Squeeze Juice Company Marks and unfairly compete with MSJC, thereby causing MSJC irreparable harm.  This threat of future injury to MSJC's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the Main Squeeze Juice Company Marks and to ameliorate and mitigate the MSJC's injuries.

## THIRD CLAIM FOR RELIEF

**TRADEMARK DILUTION IN VIOLATION OF THE LANHAM ACT**
**Lanham Act § 43(c) (15 U.S.C. § 1125(c))**
**(Against All Defendants)**

96.     MSJC realleges and incorporates each allegation contained in the preceding paragraphs.

97.     The Main Squeeze Juice Company Marks have become "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

98.     Defendants' unauthorized use of the Main Squeeze Juice Company Marks in connection with their former Franchised Store,  have caused and will continue to cause dilution and disparagement of the distinctive quality of the Main Squeeze Juice Company Marks, and have lessened and will continue to lessen the capacity of the marks to identify and distinguish the goods and services of MSJC, all in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

99.     Defendants willfully intend to harm the reputation of MSJC or to cause dilution of the Main Squeeze Juice Company Marks.

100.     Defendants' actions, as described herein, have unjustly damaged the Main Squeeze Juice Company Marks, MSJC's business reputation, and the goodwill associated with the marks.

17

101.    Defendants' actions are causing irreparable harm to MSJC for which there is no adequate remedy at law.

102.    Defendants' actions, as described herein, constitute willful trademark infringement, thereby entitling MSJC to the remedies available under 15 U.S.C. §§ 1116, 1117, and 1118.

103.    Unless enjoined by the Court, Defendants will continue to dilute the Main Squeeze Juice Company Marks, thereby causing MSJC to sustain irreparable harm.  This threat of future injury to MSJC's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the Main Squeeze Juice Company Marks and to ameliorate and mitigate the MSJC's injuries.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract
### (Against DILLC)

104.    MSJC realleges and incorporates each allegation contained in the preceding paragraphs.

105.    The Franchise Agreement is a valid and enforceable contract under Louisiana law.

106.    As described herein, the Franchise Agreement required DILLC to continuously operate the Webster Store, and keep it open for business during normal business hours on all regular business days.

107.    As described herein, DILLC breached the Franchise Agreement by permanently closing the Webster Store as of January 12, 2025, which constituted abandonment of the franchise.

108.    As described herein, on January 27, 2025, MSJC properly exercised its right under the Franchise Agreement to terminate the Franchise Agreement pursuant to DILLC's material breach of the agreement.

109.    As described herein, as a result of the termination of Franchise Agreement, pursuant to Section 15.7 of the Franchise Agreement, DILLC is obligated to pay to DILLC liquidated damages in an amount equal to "(i) [DILLC's] average weekly Royalty Fee plus [its] average weekly Marketing Fee due for the last fifty-two (52) weeks . . . before . . . termination, (ii) multiplied by the number of weeks remaining in the then-current Term of the Franchise Agreement, and (iii) discounted to present value using the then-current prime rate of interest quoted by [MSJC's] principal commercial bank."

110.    The amount of liquidated damages DILLC owes MSJC under that formula is $73,446.00.

111.    As described herein DILLC also owes to MSJC past due royalties in the amount of $176.75.

112.    As of the date of the filing of this complaint, in breach of the express terms of the Franchise Agreement, DILLC has failed or refused to pay the liquidated damages owed to MSJC.

113.    As a direct and proximate result of DILLC's breach of its post-termination payment obligations under Franchise Agreement, MSJC has been damaged in the amount to be proven at trial, but in any event no less than $73,622.75.

114.    The $73,622.75 in damages for which DILLC is liable to MSJC is a sum certain as of January 27, 2025.

115.    As described herein, the Franchise Agreement imposes additional post-termination obligations on DILLC, including but not limited to the following obligations: (a) to *immediately* cease and desist from all use of the Main Squeeze Juice Company Marks and use of MSJC's Confidential Information (as defined in the Franchise Agreement); (b) to *immediately* deliver to MSJC the "Manuals and all other records, correspondence, files, and any instructions containing

Confidential Information relating to the operation of the Franchised Store in [DILLC's] possession, and all copies thereof, and certify that DILLC has destroyed all digital copies; and (c) to, at DILLC's own expense  take all closing, de-identification, and de-branding steps, and make the alterations to the Franchised Store's interior and exterior . . . to distinguish the Franchised Store clearly from its former appearance and from other MSJC Franchised Stores.

116.    DILLC has failed to comply with its post-termination obligations by, among other things, failing to de-identify the Webster Store from its appearance as a Franchised Store and failing to immediately deliver to MSJC the Manuals and other records and files as required by Article 15 of the Franchise Agreement.

117.    As a direct and proximate result of DILLC's  ongoing breaches of the Franchise Agreement, MSJC has suffered and continues to suffer irreparable harm.

## FIFTH CLAIM FOR RELIEF

### Breach of Contract – Personal Guaranty
### (Against Drost and Jones)

118.    MSJC realleges and incorporates each allegation contained in the preceding paragraphs.

119.    As described herein, Drost and Jones entered into the Guaranty in connection with DILLC's execution of the Franchise Agreement.

120.    The Guaranty is a valid and enforceable agreement under Louisiana law.

121.    As described herein, pursuant to the Guaranty, Drost and Jones agreed to personally guarantee all of DILLC's obligations under the Franchise Agreement.

122.    As described herein, DILLC owes MSJC liquidated damages and past due royalties in the amount of $73,622.75.

123.    DILLC has refused or failed to pay the amounts due and owing to MSJC despite prior demand.

124.    Under the terms of the Guaranty, Drost and Jones are jointly and severally liable to MSJC for all of DILLC's unsatisfied obligations under the Franchise Agreement.

125.    Drost and Jones breached the Guaranty by failing to pay the amounts owed to MSJC.

126.    As a direct and proximate result of Drost's and Jones' breach of the Guaranty, MSJC has been damaged in the amount to be proven at trial, but in any event no less than $73,622.75.

127.    The $73,622.75 in damages for which Drost and Jones are jointly and severally liable is a sum certain as of January 27, 2025.

## **RELIEF REQUESTED**

WHEREFORE, MSJC respectfully requests the entry of judgment against Defendants, and each of them, as follows:

A.    A preliminary and permanent injunction prohibiting Defendants, and all those in active concert with and participation with them, from using the Main Squeeze Juice Company Marks or any form thereof, and requiring Defendants to immediately provide to MSJC the Manuals and all other records, correspondence, files, and any instructions containing Confidential Information relating to the operation of the Franchised Store in DILLC's possession; and all copies thereof;

B.    Compensatory damages in an amount to be determined by the trier of fact, but in no event less than $73,622.75;

C.    Treble damages as provided under 15 U.S.C. § 1117;

D.      Disgorgement of all moneys realized by Defendants' unauthorized use of the Main Squeeze Juice Company Marks or any form thereof, if any;

E.      MSJC's actual costs and attorneys' fees as provided in the Lanham Act, 15 U.S.C. §§ 1117, 1125(a), and pursuant to any other applicable state or federal law;

F.      MSJC's costs and attorneys' fees as provided in Sections 15.9 and 20.8 of the Franchise Agreement and, by reference, Paragraph 7 of the Guaranty;

G.      An order directing Defendants to file with the Court and serve on MSJC, within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which DILLC has complied with the injunction pursuant to 15 U.S.C. § 1116; and

H.      Such other relief as the Court deems necessary and just under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

MSJC hereby demands a trial by jury in this action on all claims and triable issues.


Dated: January 30, 2025                    Respectfully submitted,

                                           */s/ Steven R. Selsberg*
                                           Steven R. Selsberg
                                           S. SELSBERG LAW, PLLC
                                           steve@selsberglaw.com
                                           Texas Bar No. 18021550
                                           S.D. Texas Bar No. 9738
                                           3355 West Alabama, Suite 444
                                           Houston, Texas 77098
                                           Telephone: (832) 410-8515
                                           Facsimile: (832) 410-8515

                                           *Attorneys for Plaintiff*

*OF COUNSEL:*

Jeffrey H. Wolf, *pro hac vice to be filed*
Daniel G. Roberts*, pro hac vice to be filed*
**QUARLES & BRADY, LLP**
Renaissance One
Two North Central Avenue, Suite 600
Phoenix, AZ 85004-2322
Telephone:  (602) 229-5200
Facsimile:  (602) 420-5168
jeffrey.wolf@quarles.com
daniel.roberts@quarles.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2025, a copy of the foregoing document was filed electronically on the Court's Electronic Case Filing (ECF) system.  A Notice of Electronic Filing (NEF) will be sent by operation of the Court's ECF system to the filing party, the assigned Judge and any registered user in the case as indicated on the NEF.

*/s/ Steven R. Selsberg*